

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GROVER SELLERS
ATTORNEY GENERAL

Honorable Claude A. Williams
Chairman and Executive Director
Texas Unemployment Compensation Commission
Austin, Texas

Dear Sir:                    Re:   Opinion No. 0-3285
                                   Were services performed on turpen-
                                   tine farm exempt from unemployment
                                   compensation taxes and related
                                   questions.

      We have your letter of March 14, 1941, which reads
as follows:

    "Since its enactment the Texas Unemployment
Compensation Act has provided that the term "em-
ployment" shall not include agricultural labor.
Article 5221b-17 (g) (5) (C)   Article 5221b-9
provides that the Texas Unemployment Compensation
Commission is authorized to make rules and regu-
lations and define terms.  On December 5, 1936,
the Commission adopted its Regulation No. 38:

    "The term 'agricultural labor' includes all
services performed –

    (a)  By an employee, on a farm, in connec-
tion with the cultivation of the soil, the har-
vesting of crops, or the raising, feeding or
management of livestock, bees, and poultry; or

    (b)  By an employee in connection with the
processing of articles from materials which were
produced on a farm, also the packing, packaging,
transporting, or marketing of those materials
or articles.  Such services do not constitute
'agricultural labor', however, unless they are

performed by an employee of the owner or tenant
of the farm on which the materials in their raw
or natural state were produced, and unless such
processing, packing, packaging, transporting, or
marketing is carried on as an incident to ordinary
farming operations as distinguished from manufac-
turing or commercial operations.

"As used herein the term 'farm' embraces the
farm in the ordinarily accepted sense, and includes
stock, dairy, poultry, fruit and truck farms, plant-
ations, ranches,ranges, and orchards. The term
'farm' does not embrace lumbering and forestry in-
dustry for the purpose of this Act."

"On July 2, 1937, the Commission rescinded the
above regulation and adopted Regulation 24 and Regu-
lation 25:

Regulation 24

'The term 'agricultural labor' includes all
services performed

(1) By an employee, on a farm, in connection
with the cultivation of the soil, the harvesting
of crops, or the raising, feeding, or management
of livestock, bees, and poultry; or

(2) By an employee in connection with the
processing of articles from materials which were
produced on a farm, also the packing, packaging,
transporting, or marketing of these materials or
articles. Such services do not constitute 'agri-
cultural labor', however, unless they are per-
formed by an employee of the owner or tenant of
the farm on which the materials in their raw or
natural state were produced, and unless such pro-
cessing, packing, packaging, transporting, or
marketing is carried on as an incident to ordinary
farming operations as distinguished from manufac-
turing or commercial operations.

'As used herein the term 'farm' embraces the
farm in the ordinarily accepted sense, and includes
stock, dairy, poultry, fruit and truck farms,

plantations, ranches, ranges, and orchards.
The term 'farm' does not embrace lumbering and
forestry industry for the purpose of this Act.'

Regulation 25

'Agricultural Packing and Marketing Associa-
tions Sec. 19 (g) (6) (D)

'The fact that an individual is engaged in
handling farm products does not of itself make the
services performed for him 'agricultural'. Ser-
vices are often performed by employees in con-
nection with the packing, processing, packaging,
transporting or marketing for sale to consumers
of farm products which are not a part of ordinary
farming operations but a part of commercial or
manufacturing operations. Where such services
are performed by individuals who are employed by
an association or producers, even though the
products in connection with which the services
are performed were produced by the members of
such association, the services of such employees
are not exempt as agricultural labor, since the
individuals are employees of the association and
not of a particular producer.'

"On January 1, 1940, the Commission rescinded
Regulation 24 and Regulation 25, above. There has
been no Commission Regulation on this subject since
the last mentioned date.

"Upon the enactment of the Unemployment Compen-
sation Act, this Commission began collecting taxes
from the Wiergate Naval Stores, Inc. It continued
to collect unemployment taxes from the named employer
until January 1, 1940, when it relieved the employer
of liability beginning January 1, 1940, in accord-
ance with its decision dated March 19, 1940, which
reads in part:

'It is therein stated that "The Wiergate Naval
Stores, Incorporated, operated what is commonly
called a turpentine farm near Wiergate, in Newton
County, Texas. The operation of a turpentine camp
consists of the making, gathering and stilling of
crude gum into gum spirits and resin. This opera-
tion is accomplished by chipping a live pine tree

and placing thereon a cup into which crude gum is collected. This crude gum is periodically gathered and transported to the camp still where same is processed into the gum spirits of turpentine and resin. The crude gum is ordinarily harvested or collected during eight or nine months of each calendar year. The persons performing the service abovementioned are unskilled laborers who work under the supervision of a foreman."

'Upon the basis of the information presented, it is the opinion of this Commission and it hereby rules that services performed for you of the kind specified above are services which come within the exception afforded agricultural labor by the Texas Unemployment Compensation Act, Art. 522lb-17 (g) (5) (C), Revised Statutes, 1925. These services, being within the definition of agricultural labor, are not services which constitute employment as that term is used in the Act.'

"As stated, this ruling applied only to the period beginning January 1, 1940.

"The Wiergate Naval Stores, Incorporated, has now requested that it be refunded all taxes which it paid prior to January 1, 1940, upon wages payable to individuals performing the type of services indicated in the above quotation. Such refund has been refused.

"The questions which we desire answered are:

"1. Under the Texas Unemployment Compensation Act and the Regulations indicated, were and are the services performed for the employer agriculture labor and exempt?

"2. If such services did constitute agriculture labor prior to January 1, 1940, may a refund of contributions paid be made as to: (a) taxes due after April 1, 1939? (b) taxes due prior to April 1, 1939?

"3. In the event that a refund were due Wiergate Naval Stores, Incorporated, for taxes paid

this Commission which were due prior to April 1, 1938, except for the fact that Section 8 of the Unemployment Compensation Act, Article 5221b-6, Vernon's Revised Civil Statutes, prevented such refund, would an act of the legislature making appropriation of the amount of such refund and authorizing payment to the employer be valid?

"4. If Question No. 3 is answered 'yes' how would such payment be accomplished and out of what fund would it be paid?"

Article 5221b, Revised Civil Statutes of Texas, provides that services performed for wages under certain circumstances constitute employment under the Texas Unemployment Compensation Act unless such services are shown to the Commission that they are not included in the exemptions from the Act. Among the exemptions found in Article 5221b is Section 17 (g) (5) (c) "agricultural labor".

In view of this exemption the Commission acting under the authority of Article 5221b, Section 9, enacted the quoted regulations.

The regulation discloses that the Commission intended to limit the term "agricultural labor" to that labor performed on a farm as defined by them. In all instances it is held that the term "farm" is to be understood in its ordinary and popular sense and that it means a tract of land used for raising crops and rearing animals. See Gordon v. Buster, 257 S. W. 220, 113 Tex. 382; 16 Words & Phrases, page 248.

The States of Colorado and Connecticut have adopted regulations with substantially the same wording as the regulations of the Texas Unemployment Compensation Commission regarding agricultural labor. In a suit for the collection of taxes assessed against a concern operating mushroom sheds, styled Great Western Mushroom Company v. Industrial Commission, 82 Pac. (2d) 751, the Supreme Court of Colorado said:

"We cannot think the promulgated regulation is other than in keeping with the clear intent of the enactment."

The court further discussed the fact that the operations in question were carried out throughout most of the year, and the purpose in the exemption of agricultural labor was that it was seasonal work thus it should not be contended that the Legislature intended to exempt this type of employment. The court held that this was not agricultural labor as defined by the Commission.

In the case of Park Floral Company v. Industrial Commission, 91 Pac. 492, in the Supreme Court of Colorado, the demand was made upon a floral company for payment of taxes. The company contended that this operation was within the exemption of agricultural labor and further that the promulgation of the Commission ruling constituted an arbitrary attempt by the Commission to restrict and limit the ordinary meaning of the term "agricultural labor". The court there said that this objection is foreclosed by the recent pronouncement of that court in the case of Great Western Mushroom Company v. Industrial Commission, supra. The court in this instance also held that the delegation of the authority to enact rules and regulations was not an invalid delegation of legislative authority.

In the case of H. Duys & Co., Inc., et al v. Tone, 5 Atl. (2d) 23, the Supreme Court of Connecticut held that the regulation of the Commission of Connecticut to be valid, and that it did not violate the equal protection or due process clauses of the Constitution. The court in this opinion reviewed the definition of "farm laborer" and "agriculture".

Acting under the same rule making power as it provided in the Colorado Unemployment Statute, the Texas Commission enacted the same regulation as that of Colorado.

Your regulations of December 5, 1936, and July 2, 1937, stated what they intended the term "farm" to embrace, and under this definition the turpentine industry would not be "agricultural labor". The power of the Texas Commission to enact their regulations is sustained by the H. Duys & Company and Park Floral cases, supra. However, the action of the Commission on March 19, 1940, in rescinding its regulation reflects a change in their attitude. They must have intended that the term should have the broadest meaning in line with the modern trend.

You have furnished a photostatic copy of the findings of fact and conclusions of law of the District Court of the United States for the Middle District of Georgia in the case of Geo. L. Shelton, et al, plaintiffs, vs. Marion H. Allen.

The applicant cites the ruling of the court as a basis for the claimed exemption. But, let it be recognized that the Statutes of Texas contain no such exemption as that of Title 12, Section 1141j, U. S. C. A. Further, this case was disposed of on procedural grounds without passing on the merits.

In the case of United States v. Turner Turpentine Company in 111 Fed. (2d) 400, an opinion of the Circuit Court of Appeals for the Fifth Circuit, holds that the producers of crude gum are engaged in agricultural labor. We call your attention to the fact that this decision is influenced, if not based upon the fact that Georgia in 1939 had enacted a statute providing that all original producers of crude gum and their employees were declared to be farmers in so far as any statutes of the State related. No such statute exists or has ever been on the statute books of Texas. That court was further influenced by the Federal Statute on this subject.

The distinction between farming and that of cutting and logging timber was recognized by the Supreme Court of Tennessee in the case of Robinson v. Stockley, 61 S. W. (2d) 677.

In the case Pratt v. City of Macon, 134 S. E. 191, the Court of Appeals of Georgia was construing a municipal ordinance of the City of Macon, which required that merchants or others outside the city limits delivering goods in the City to take out a dray license for each wagon used in the delivery. The facts in that case were that the individual in question was a farmer in that he raised truck, chickens and ducks on his farm. Also on said farm was a mineral water well from which the individual took the mineral water and delivered and sold same within the city limits of the City of Macon. The court concluded that such license would have to be acquired under the facts and stated as follows:

"1. That said mineral water was not a farm product within the meaning of section 1851 of the Civil Code of 1910, and that the requirement of said ordinance as to taking out a license was applicable to plaintiff in error.

"2. That the fact that plaintiff in error drew and bottled said water from a well located on his own land, and that he was also engaged in raising truck, chickens, and ducks, which were

Honorable Claude A. Williams, Page 8

also delivered by means of said truck, did not
relieve him from procuring the 'dray' or occu-
pation license as required by said ordinance."

In the case of Great Western Mushroom Company vs.
Industrial Comm., 82 Pac. (2d) 751, the Supreme Court of
Colorado in construing a similar statute said that the Legis-
lature sought only to exempt seasonal labor such as farm
labor. This applicant, by its own admission, operates nine
or ten months a year, and there is no showing that some work
is not done throughout the twelve months of each year. Can
it then be said that is only seasonal labor as defined by
the Commission's regulations?

The statutory authority for the regulations of
Dec. 5, 1936, and July 2, 1937, is present in Article 5221b-9(a).
The constitutionality of substantially the same regulations
has been upheld by the Supreme Court of Colorado in Park
Floral Co. v. Industrial Comm., 91 Pac. (2d) 492, and by the
Supreme Court of Connecticut in the case of H. Duys & Company
v. Tone, 5 Atl. (2d) 23.

The authorities cited, together with that of Great
Western Mushroom Company v. Industrial Commission, supra, give
ample support for the regulation and determination of your
Commission prior to January 1, 1940.

The courts in the Park Floral and H. Duys & Company
cases, supra, say that by the evolutionary processes attend-
ant upon our present day business methods many activities
formerly embraced in farming have become specialized or re-
moved from the farm.

Your first question asks:

"Under the Texas Unemployment Compensation
Act and the Regulations indicated, were and are
the services performed for the employer agricul-
ture labor and exempt?"

It is our opinion that the determination of liabi-
lity by the Commission upon the taxes accruing prior to Jan-
uary 1, 1940, was supported by the resolutions quoted. That
being true, there can be no refund. Therefore, it is unneces-
sary to answer your questions 2, 3 and 4 regarding refunds.

A part of your first question is an inquiry of the present liability of the Wiergate Naval Stores for unemployment taxes.

There being no present regulation defining "agricultural labors", we must determine the scope of that term. The Commission places no limitation on the term. In answering the question of liability prior to January 1, 1940, we recognized the limitation you placed on the term "agricultural labor" by the Commission's regulations specifying services on a farm. The word "agriculture" has a broader meaning than farming, In Re Rodgers, 279 S. W. 800. Lowe v. North Dakota Workmen's Compensation Bureau, 264 N. W. 867. "One may be employed in agriculture and yet not be a farmer in the ordinary sense of the term, nor even a farm laborer as the term is used in our lien laws."

However, in the absence of any present regulation defining "agricultural labor", we presume you intend to give to that term the broad meaning applied by the court in the Turner Turpentine case, supra, and by the Federal Social Security Agency. This latitude would support the ruling of the Commission of March 19, 1940, as reflected by the photostatic copy of letter of Orville S. Carpenter, Chairman and Executive Director, to the Wiergate Naval Stores. We do not say that such a ruling would be compatible with your regulations effective to January 1, 1940. The only reported decision being in support of the broadest sort of construction of "agricultural labor", you are justified in following that decision when it does not conflict with your own regulations.

Yours very truly

APPROVED MAY 2, 1941                    ATTORNEY GENERAL OF TEXAS

/s/ GROVER SELLERS

FIRST ASSISTANT                    By  /s/     Morris Hodges
ATTORNEY GENERAL                                Assistant

MH:N:ddt                                        APPROVED
                                                OPINION
                                                COMMITTEE
                                                BY B. W. B.
                                                CHAIRMAN

O. K.
G.R.L.